*J. D. McKenzie* and *L. L. Moore,* contra.

---

## ANDERSON v. THE STATE.

1. "A prima facie case is all that is necessary to carry dying declarations to the jury." Whether or not the person making them was conscious at the time, and realized that death was impending, are issues of fact.

2. A new trial will not be granted on the ground that illegal evidence was admitted, when it does not clearly appear from the motion that such evidence was in fact admitted.

3. Under the circumstances of this case, it was not error to charge that the jury might inquire whether or not the accused had an opportunity to kill the deceased.

4. The alleged newly discovered evidence was merely impeaching in character, and was therefore not ground for a new trial. The verdict was supported by the evidence, and was not contrary to law.

Submitted February 21, — Decided March 2, 1905.

Indictment for murder.    Before Judge Butt.    Muscogee superior court.   January 6, 1905.

*T. T. Miller* and *E. J. Wynn,* for plaintiff in error.    *John C. Hart, attorney-general,* and *S. P. Gilbert, solicitor-general,* contra.

CANDLER, J.   1. The accused was convicted of murder, and recommended to mercy.   There was no eye-witness to the homicide, and the accused denied having had anything to do with it. The State relied, for a conviction, largely upon evidence of dying declarations of the deceased ; and exceptions to the admission of

this evidence form the principal grounds of the motion for a new trial. It appeared that at the time the declarations were made the deceased's throat was cut and his windpipe severed; that it was with great difficulty that he could articulate at all, or that those present could understand what he said; that he had been informed by the doctor that in his (the doctor's) opinion he was in a dying condition; and that for the most part he was in a semi-conscious condition, but when aroused by the physician he seemed to comprehend what was said to him. All the evidence on the subject was to the effect that the deceased stated that the accused, Anderson, had inflicted the wounds from which he subsequently died. · This evidence was objected to on the ground that the proper foundation for it was not laid by showing that the deceased, at the time of making the declarations, was fully conscious, or that he knew or believed that he was in a dying condition. The court let the evidence go to the jury for what it was worth, and left it to them to determine the condition of the deceased at the time the statements were made; instructing them that unless the deceased was conscious at the time, and aware of his condition, the declarations should not be considered.

"A prima facie case is all that is necessary to carry dying declarations to the jury. It is an issue of fact whether or not they were made in the immediate prospect of death." *Varnedoe* v. *State*, 75 *Ga*. 181. It is not necessary that the person whose statements are sought to be introduced should express himself as believing that he is in a dying condition. Consciousness of his condition may be inferred from the nature of his wound, or from other circumstances. *Young* v. *State*, 114 *Ga*. 849. In the present case, if the jury were authorized to find that at the time the alleged declarations were made the deceased was conscious at all, there was no difficulty in finding that he was conscious of his condition; for, leaving out of consideration the fact that he was · informed by the physician that he would not recover, the horrible nature of his wounds was enough to put any conscious man on notice that they were almost necessarily fatal. The evidence as to whether or not he was conscious and realized what he was saying might have been stronger; but the evidence of the physician who attended him, and of a witness who was with him for some time after he was wounded, was certainly sufficient to make out

a prima facie case, and it was for the jury, under proper instructions from the court, to determine this issue of fact.   There was no error in admitting any of the evidence objected to on the subject of dying declarations, and the charge on that subject which is assigned as error fully met the requirements of the law.

2. Error is assigned in the admission of certain evidence, on the ground that it was hearsay and not part of the res gestæ; but it appears that in passing upon the objections offered by counsel for the accused the court said:   "I don't think it ought to go [in].   If he supplements it by the next witness, then it might be admissible; but of course if he does not, it goes out."   It does not appear from the motion whether the evidence was supplemented or not, or that the court made any further ruling on the subject.   From the record before us it would appear that the evidence was rejected, and of course a new trial will not be granted on the ground that it was admitted.

3. The following charge is also assigned as error:   " Now, gentlemen, what is the truth about this case?   Did the defendant take the life of the deceased ?   If he did, was he guilty of. murder ?   You are to look to how the deceased was killed.   Look to where he was killed, and how.   Look to his conduct about that time. · Did he have an opportunity to kill him?   Look to all these things.   Look to his conduct immediately afterwards, and say what the truth is."   It is complained that the words "Did he have an opportunity to kill him ?" had a tendency to give undue importance to a circumstance that should not be considered in arriving at the guilt or innocence of the accused.   We do not think that the charge is fairly open to this criticism.   It in effect instructed the jury that they were to consider all the circumstances of the case in order to reach their verdict.   The opportunity of the accused to commit the crime was a circumstance which the jury might and should have considered, especially in view of the contention of the accused that he did not in any way participate in its commission.   Certainly the charge was not per se harmful to the accused, and it will not work the grant of a new trial.

4. The alleged newly discovered evidence submitted to the court was no ground for the grant of a new trial, for its only effect was to impeach certain witnesses who testified on the trial.   See *Hardy* v. *State*, 117 *Ga.* 40.   Two witnesses for the State testified that

the accused confessed that he committed the crime with which he was charged; and the deceased in his dying declaration stated that the accused was his assailant. Opposed to this the accused offered no testimony, but made a short statement in which he flatly denied that he had killed the deceased, without attempting to explain any of the inculpatory circumstances in evidence. It therefore can not be said that the verdict was contrary to the evidence.            *Judgment affirmed.   All the Justices concur.*